IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SCOTT HUGHES, | ) | CIVIL NO. 09-00386 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT; |
| BOBBY MAYORAL; WAIKIKI | ) | (2) GRANTING IN PART AND |
| SAND VILLA HOTEL, INC.; | ) | DENYING IN PART WAIKIKI |
| PRINCIPLE HOTELS, LLC; and DOE | ) | SAND VILLA HOTEL'S MOTION |
| DEFENDANTS 1-50, | ) | FOR SUMMARY JUDGMENT; AND |
| | ) | (3) GRANTING IN PART AND |
| Defendants. | ) | DENYING IN PART MAYORAL'S |
| | ) | MOTION FOR SUMMARY |
| _____ | ) | JUDGMENT |

**ORDER (1) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (2) GRANTING
IN PART AND DENYING IN PART WAIKIKI SAND VILLA HOTEL'S
MOTION FOR SUMMARY JUDGMENT; AND (3) GRANTING IN PART
AND DENYING IN PART MAYORAL'S MOTION FOR SUMMARY
JUDGMENT**

## I. INTRODUCTION

Plaintiff Scott Hughes ("Plaintiff"), a former security guard/bellman

at the Waikiki Sand Villa Hotel, Inc. (the "Hotel"), asserts claims against his

employer, Principle Hotels, LLC ("Principle Hotels") and the Hotel (collectively,

"Hotel Defendants") for discrimination and sexual harassment/hostile work

environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),

and state law claims against Hotel Defendants and Plaintiff's co-worker Bobby

Mayoral ("Mayoral") (collectively, "Defendants"), for various state law claims.

Currently before the court are three Motions for Summary Judgment,

including (1) Defendants' Motion as to all claims; (2) the Hotel's Motion as to all

claims against it and for back pay; and (3) Mayoral's Motion as to the state law

claims alleged against him.[1]  For the following reasons, the court GRANTS in part

and DENIES in part each of Defendants' Motions.

## II. <u>BACKGROUND</u>

**A.    Factual Background**

Principle Hotels manages the Hotel's operations and employs all of

the Hotel's employees.  Doc. No. 35-4, Sheldon Yoshida Decl. ¶¶ 2-3.  The Hotel

has no employees of its own and is a separate corporation from Principle Hotels.

*Id.* ¶ 3.

On February 22, 2008 Principle Hotels hired Plaintiff as a security

guard at the Hotel.  Doc. No. 32-6, Yoshida Decl. ¶ 2.  Around this time, Plaintiff

received Principle Hotel's employee handbook.  *See* Doc. No. 32-3, Defs.' Ex. A at

Pl.'s Depo. 170:17-22.  The employee handbook explains certain rules, the

---

[1]  Given the multiple Motions for Summary Judgment, the court cites to these Motions by
Document Number for ease of reference.

violation of which will result in discipline up to and including discharge.  *See id.* at

Pl.'s Depo. Ex. 10.  These rules prohibit, among other things:

> 1.  Insubordination . . . .
> 2.  Use of profane or abusive language when used maliciously against another employee and/or when it constitutes insubordination.
> 3.  Fighting or attempting bodily injury to another employee.

*Id.*  In addition to these rules, Plaintiff, as a security guard, was held to higher

performance expectations than other employees, including that he handle conflicts

with coworkers in a non-threatening manner and not instigate unnecessary

confrontations with his coworkers.  Doc. No. 32-6, Yoshida Decl. ¶ 21; *see also*

Doc. No. 32-23, Defs.' Ex. R (describing security guard position).

During Plaintiff's employment, there were two incidents between

Plaintiff and Mayoral, a Hotel valet.  In the first incident, in 2006, Plaintiff was

working as a bellman and assisted a Caucasian family with their luggage to their

vehicle, where Mayoral was working.  The family failed to tip Mayoral and after

they drove off, Mayoral yelled, "F---ing white Americans, because I'm a f---ing

Filipino, they're not going to tip me, prejudiced f---ing Americans."  Doc. No. 32-

3, Defs.' Ex. A at Pl.'s Depo. 54:6-55:19.  The next day, Mayoral asked Plaintiff to

forget about the incident, but also apparently reported some alleged wrongdoing by

Plaintiff to the night manager.  *Id.* at 56:18-57:17.  When the night manager spoke

with Plaintiff about his alleged wrongdoing, Plaintiff reported the incident with

Mayoral. *Id.* After this incident, Plaintiff stopped talking to and avoided Mayoral.

*Id.* at 55:24-56:6.

Plaintiff and Mayoral were involved in a second incident on August

31, 2008. According to Plaintiff, in the early morning, he followed a vehicle into

the garage to inform the driver about the Hotel's valet procedures. *See* Doc. No.

32-5, Defs.' Ex. A, Pl.'s Depo. at Ex. 8. Upon reaching the vehicle, Plaintiff

realized the driver was Mayoral and walked away. *Id.* Mayoral allegedly jumped

out of the vehicle and confronted Plaintiff, trying to start a fight. Plaintiff walked

away from Mayoral to the Hotel lobby, and Mayoral followed, pushing Plaintiff

and calling him a "f---ing haole faggot." *Id.*; Doc. No. 32-3, Defs.' Ex. A, Pl.'s

Depo. at 66:3-4, 64:24-65:9. While Mayoral was pushing him, Plaintiff called his

supervisor, Benjamin Tsui, seeking his assistance in getting Mayoral to leave.

*Id.* at Pl.'s Depo. 69:5-11. When the two men reached the lobby, a couple of

customers at the bar stepped in and confronted Mayoral. Defs.' Ex. A, Pl.'s Depo.

at 66:3-13. Mayoral walked away, but yelled to Plaintiff that he would be back to

fight Plaintiff at 6:00 a.m. when Plaintiff finished his shift. *Id.*

Just prior to 6:00 a.m., a Hotel employee relayed to Plaintiff a

message from Mayoral that he was back at the Hotel to "kick [Plaintiff's] f---ing

4

faggot ass." *Id.* at 76:12-77:5.  Plaintiff again called Tsui to intervene and ask

Mayoral to leave.  *Id.* at 76:23-77:5.  At 6:00 a.m., Plaintiff punched out of work,

saw Mayoral waiting for him, and proceeded to his truck.  *Id.* at 78:2-12.  While

Plaintiff started his truck, Mayoral confronted Plaintiff, yelling slurs and trying to

fight Plaintiff.  *Id.* at 78:12-20.  Plaintiff refused to fight and drove away in his

truck.  *Id.* at 78:21-79:2; Doc. No. 32-5, Defs.' Ex. A at Pl.'s Depo. Ex. 8.

On September 1, 2009, General Manager Sheldon Yoshida

("Yoshida") learned of the incident and instructed Tsui to gather information from

Plaintiff, Mayoral, and any witnesses.  *See* Doc. No. 32-7, Defs.' Ex. B at 1.

Plaintiff described the incident in a written statement, Defs.' Ex. A at Pl.'s Depo.

Ex. 8, but did not complain to anyone in management about any alleged sexual

harassment.  *See* Doc. No. 32-3, Defs.' Ex. A at 135:3-7.  After reviewing the

witness statements and the video footage from the garage to the lobby, Yoshida

concluded there was no conclusive evidence showing who was responsible for the

argument.  Doc. No. 32-7, Defs.' Ex. B at 2; Doc. No. 32-6, Yoshida Decl. ¶ 5.

Mayoral provided a very different version of events than Plaintiff, *see* Doc. No. 32-

7, Defs.' Ex. B at Mayoral Statement, and other witness statements did not fully

corroborate Plaintiff's version of events.  *Id.* at Andrew Alce Statement, Kahukina

Pearce Statement, Rey Gascon Statement, "Kino" Statement.  Yoshida therefore

decided to write up both Plaintiff and Mayoral for arguing on Hotel property and

warn them that if another incident occurs they would be terminated.  Doc. No. 32-

6,Yoshida Decl. ¶ 5.

On September 8, 2008, Mayoral received his written warning,

including a warning that he would be terminated "if this happens again."  *See id*.

¶ 6; Doc. No. 32-11, Defs.' Ex. F.  Yoshida is not aware of any complaints about

Mayoral other than from Plaintiff, and Yoshida has received no complaints about

Mayoral since the August 31, 2008 incident.  Doc. No. 32-6, Yoshida Decl. ¶ 6.

On September 9, 2008, Yoshida and Tsui met with Plaintiff to discuss

the August 31, 2008 incident, as well as the fact that Yoshida had received reports

about Plaintiff confronting other employees.  *Id.* ¶ 7; Doc. No. 32-3, Defs.' Ex. A

at Pl.'s Depo. 82:8-17.  Yoshida told Plaintiff that he was being charged with

fighting and that another violation would result in termination.  *See* Doc. No. 32-3,

Defs.' Ex. A at Pl.'s Depo. 83:2-7.  Yoshida further advised Plaintiff that if he has

a problem with an employee, he should bring it up with management rather than

confront the employee himself.  Doc. No. 32-6, Yoshida Decl. ¶ 7; *see also* Doc.

No. 32-12, Defs.' Ex. G.  Plaintiff became upset about Yoshida's decision and

explained that the August 31, 2008 incident had caused him stress and that he was

afraid to go to work.  Doc No. 32-6, Yoshida Decl. ¶ 7; *see also* Doc. No. 32-13,

Defs.' Ex. H.  Plaintiff left without receiving his written warning and was on sick leave until September 19, 2008.  Doc. No. 32-6, Yoshida Decl. ¶ 8; *see also* Doc. No. 32-13, Defs.' Ex. H.

Around the time of this meeting with Plaintiff, Yoshida was notified of at least three other incidents involving Plaintiff.  On September 1, 2008, Hector Torres, a server, reported that Plaintiff confronted him about Torres' performance as a server, yelling at him and asking him if he "wanted to start something."  Doc. No. 32-6, Yoshida Decl. ¶ 4; *see also* Doc. No. 32-9, Defs.' Ex. D, Doc. No. 32-13, Defs.' Ex. H.  Yoshida also learned of two alleged altercations Plaintiff had with desk clerk William Finley.  In the first, on August 24, 2008, Finley allegedly asked Plaintiff to fill out an incident report that the towel dispenser in the men's lobby restroom was broken.  In response, Plaintiff allegedly yelled and cursed at Finley while a customer was present, telling Finley, "Who do you think you[] are?! You['re] nothing to me!! . . .  Who the fuck do you think you are?!"  *See* Doc. No. 32-8, Defs.' Ex. C at 1; *see also* Doc. No. 32-13, Defs.' Ex. H.  In the second incident, on September 7, 2008, Plaintiff again allegedly yelled at Finley, calling him an idiot and asserting that he should not work at the Hotel.  *See* Doc. No. 32-8, Defs.' Ex. C at 2; *see also* Doc. No. 32-13, Defs.' Ex. H; Doc. No. 32-14, Defs.' Ex. I (listing incidents involving Plaintiff).

On September 10, 2008, Plaintiff came to the Hotel to meet with police and give a statement regarding charges he was filing against Mayoral.  *See* Doc. No. 32-13, Defs.' Ex. H.  Yoshida met Plaintiff at the Hotel lobby and told Plaintiff that he would have to meet with police in a conference room as opposed to in the lobby.  Doc. No. 32-6, Yoshida Decl. ¶ 9.  When Plaintiff refused, Yoshida told him that if Plaintiff did not comply, Plaintiff would be trespassed from the property.  *Id.*; *see also* Doc. No. 32-13, Defs.' Ex. H.  Plaintiff asserts that in response to Plaintiff's question of, "why don't you like me?," Yoshida responded, "How many white people do you see on my staff?"  Doc. No. 32-3, Defs.' Ex. A at Pl.'s Depo. 192:16-193:21; Doc. No. 32-4, Pl.'s Depo. Ex. 25 at 13-14.

On September 19, 2009, Plaintiff resumed work at the Hotel and met with Yoshida, Tsui, and Controller Pili Ane to discuss terms of Plaintiff keeping his employment and receive his written warning.  Doc. No. 32-6, Yoshida Decl. ¶ 10; *see also* Doc. No. 32-14, Defs.' Ex. I.  During this meeting, Plaintiff was advised of the other incident reports and that the Hotel has a zero tolerance for violence.  *See* Doc. No. 32-6, Yoshida Decl. ¶ 11; Doc. No. 32-3, Defs.' Ex. A at Pl.'s Depo. 93:16-22; Doc. No. 32-14, Defs.' Ex. I.

Despite this meeting and warning, Yoshida received several incident

8

reports regarding Plaintiff in the subsequent days.  On September 20, 2008, Yoshida received a report that an employee, Andrew Alce, received threatening text messages from Plaintiff.  On September 21, 2008, Yoshida met with Alce, who showed Yoshida the text messages.  Doc. No. 32-6, Yoshida Decl. ¶ 11.  The messages include statements such as "Next time he may pull out a pistol an shoots! All of us." and "U turned UR back on me CU soon!  Expect a paper from my friend in blue.  I have trumped UR Uncles attorneys!"  *See* Doc. No. 32-15, Defs.' Ex. J.

On September 30, 2008, server Torres reported to Yoshida that Plaintiff had taunted him by calling him Plaintiff's "hero," and that Plaintiff confronted Torres about the fact that he did not have a parking sticker on his car such that Plaintiff may put a boot on it.  Doc. No. 32-6, Yoshida Decl. ¶ 12; Doc. No. 32-16, Defs.' Ex. K.  Yoshida also received a report from Manager Athena Coughlin, stating that Plaintiff had called her about his altercation with Torres.  Doc. No. 32-6, Yoshida Decl. ¶ 13; Doc. No. 32-17, Defs.' Ex. L.  Coughlin relayed that Plaintiff told her that he got upset after he checked with Torres to see if a car without a parking sticker was his, and Torres told him "of course you know that's my car."  Doc. No. 32-17, Defs.' Ex. L.  Plaintiff allegedly told Coughlin that he had had enough of the Hotel and "it's a good thing [Plaintiff] took his

baseball bat out of his car that day earlier or people would be experiencing a beat down right now." *Id.*

On September 30, 2008 and October 2, 2008, Yoshida received voice messages from Plaintiff of a toilet flushing.  Doc. No. 32-6, Yoshida Decl. ¶ 16. Plaintiff admits that he may have left these messages because at least once, he tried to call Yoshida while using the restroom.  Doc. No. 32-3, Defs.' Ex. A at Pl.'s Depo. 119:22-120:16.

On October 2, 2008, Yoshida received a report from Tsui, who had attempted to schedule a meeting with Plaintiff to discuss the most recent incident with Torres.  Doc. No. 32-6, Yoshida Decl. ¶ 14; Doc. No. 32-18, Defs.' Ex. M. Plaintiff allegedly told Tsui that Yoshida "better not fire [Plaintiff] because if he does he is one dumb motherfucker: and if this motherfucker does he's gone burn." Doc. No. 32-18, Defs.' Ex. M.  On this same day, bartender Brenda Betcher reported that on September 29, 2008, Plaintiff was in the barroom and stated loudly that a customer he dealt with "should just pick-up a box of wine and stay home and drink himself to death."  Doc. No. 32-19, Defs.' Ex. N at 1; *see also* Doc. No. 32-6, Yoshida Decl. ¶ 15; Doc. No. 32-19, Defs.' Ex. N at 2 (relaying that a guest complained to bartender Rita Swetz about Plaintiff's remarks).

Yoshida and Ane reviewed the incident reports received since Plaintiff

was given a written warning on September 19, 2008, and jointly reached the preliminary conclusion to terminate Plaintiff's employment.  Doc. No. 32-6, Yoshida Decl. ¶ 17.  After Plaintiff refused to meet in person, they had a telephonic conference on October 3, 2008, and Plaintiff was terminated effective that same day.  Doc. No. 32-6, Yoshida Decl. ¶¶ 18-19.

As of March 9, 2010, Plaintiff remains unemployed.  Doc. No. 32-3, Defs.' Ex. A, at Pl.'s Depo. 16:8-14.  Since being terminated from the Hotel, Plaintiff has not attended any job interviews, filled out any employment applications, sent any resumes to potential employers, contacted any employment agencies, or used the internet to search for jobs.  *Id*. at 16:15-20, 17:4-6, 20-14-20.  Plaintiff did, however, call three employers a week from October 2008 through October 2009, and looked in newspapers once a week for positions.  *Id.* at 17:7-25, 19:15-20.

## B.    Procedural Background

On July 14, 2009, Plaintiff filed his Complaint in the first circuit court of the state of Hawaii, and the Hotel subsequently removed the action to this court on August 19, 2010.  Plaintiff's Amended Complaint alleges against Hotel Defendants claims for violation of Title VII and Hawaii Revised Statutes ("HRS") Ch. 378 based on discrimination and sexual harassment (Counts I and II), wrongful

termination in violation of public policy (Count III), and vicarious liability (Count V), and against all Defendants claims for negligence (Count IV); negligent infliction of emotional distress (NIED) and intentional infliction of emotional distress (IIED) (Count VI),[2] and punitive damages (Count VII).

On April 14, 2010, Defendants filed their Motions for Summary Judgment.  On June 3, 2010, Plaintiff filed Oppositions, and Defendants filed their Replies on June 10, 2010.  A hearing was held on June 21, 2010.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of

---

[2]  In his Opposition and during the June 21, 2010 hearing, Plaintiff conceded that his claims based on negligence are barred by Hawaii's Worker's Compensation Law.  *See* Doc. No. 56, at 2.  The court therefore GRANTS the Motions for Summary Judgment as to Plaintiff's negligence and NIED claims.

the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

   "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. <u>ANALYSIS</u>

Defendants argue that summary judgment should be granted on each of Plaintiff's claims for various reasons.[3]  The court addresses each of Defendants' arguments in turn.

**A.  Counts I and II:  Title VII and Hawaii State Law Claims for Discrimination and Sexual Harassment**

Counts I and II of the Amended Complaint allege violations of Title VII and Hawaii State anti-discrimination laws based on discrimination and sexual harassment.[4]  The court addresses each claim in turn.

### *1.  Discrimination*

Hotel Defendants argue that summary judgment should be granted on Plaintiff's discrimination claim because, among other reasons, Plaintiff has failed

---

[3]  In addition to the arguments addressed below, Defendants argue that Plaintiff should be deemed to have admitted all the facts set forth in Defendants' Separate Concise Statements of Facts because he failed to follow the Local Rules requiring him to file a "concise statement that admits or disputes the facts set forth in the moving party's concise statement, as well as sets forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  Local Rule 56.1(b).  The court recognizes that Plaintiff failed to follow the Local Rules, but finds that deeming all of Defendants' statements admitted too harsh a sanction.  Indeed, Defendants also failed to follow the Local Rules to the letter.  *See* Local Rule 56.1(c) (requiring the party to highlight portions of exhibits relied upon).

[4]  During the June 21, 2010 hearing, Plaintiff clarified that he is not alleging a claim for retaliation.

14

to establish a prima facie case of discrimination.  The court first outlines the legal framework for Title VII claims, and then addresses Hotel Defendants' argument.

      *a.     Framework for employment discrimination claims on summary judgment*[5]

      *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), provides a "useful tool at the summary judgment stage" in addressing Title VII claims.  *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).  Under this framework, Plaintiff has the initial burden to establish a prima facie case of discrimination.  *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (citation and quotation omitted).  "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (citation omitted).

      After a plaintiff establishes a prima facie showing of discrimination, the burden under the *McDonnell Douglas* framework shifts to a defendant to put

---

[5]  During the June 21, 2010 hearing, the parties agreed that the same general framework applies for both Plaintiff's Title VII and Hawaii state law discrimination claims.  *See also Schefke v. Reliable Collection Agency, Ltd.*, 96 Haw. 408, 426, 32 P.3d 52, 70 (2001); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (recognizing that Hawaii courts use the *McDonnell Douglas* framework in analyzing analogous state law claims).  Accordingly, the court provides a single framework and analysis for these claims.  Because the framework for sexual harassment claims differs between federal and state law, however, the court addresses these differences below.

forward a legitimate, non-discriminatory reason for its actions.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  A defendant's burden to articulate some legitimate, nondiscriminatory reason for the challenged action is merely a burden of production, not persuasion.  *Chuang v. Univ. of Cal. Davis Bd. of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir. 2000).  If a defendant puts forth a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the given reason is merely pretext for a discriminatory motive.  *Boeing Co.*, 577 F.3d at 1049 (citation and quotation omitted).

Despite this "useful tool" of the *McDonnell Douglas* framework, there is nothing that "compels the parties to invoke the *McDonnell Douglas* presumption."  *McGinest*, 360 F.3d at 1122.  "When responding to a summary judgment motion . . . [the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]."  *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) (quoting *McGinest*, 360 F.3d at 1122).  If the plaintiff submits direct or circumstantial evidence, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial."  *Id.* (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)).

16

### b.    Application

Hotel Defendants rely solely on the *McDonnell Douglas* framework in their Motions for Summary Judgment.  In response, Plaintiff does not address the *McDonnell Douglas* framework, but instead presents evidence raising the inference that Yoshida ultimately terminated Plaintiff out of racial animus.  Doc. No. 52 at 5. Specifically, on September 10, 2008 -- one day after Plaintiff was warned that another fight would result in his termination, but before he was terminated on October 3, 2008 -- Yoshida allegedly responded to Plaintiff's question of, "why don't you like me?" by stating, "How many white people do you see on my staff?" Doc. No. 32-3, Defs.' Ex. A at Pl.'s Depo. 192:16-193:21; Doc. No. 32-5,  Pl.'s Depo. Ex. 25 at13-14.

This evidence is sufficient to carry Plaintiff's burden of presenting direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated Yoshida.  *See Metoyer*, 504 F.3d at 931.  Viewed in the light most favorable to Plaintiff, Yoshida's response -- stating without so many words that he favors non-Caucasians and does not hire and/or does not retain Caucasians on his staff -- is a discriminatory statement providing evidence that Yoshida did, in fact, harbor animus towards Caucasian employees, and thus treated Caucasian employees less favorably than non-Caucasian employees.  This

evidence is sufficient to allow a reasonable jury to find that discrimination more than likely motivated Yoshida in putting Plaintiff on probation and ultimately terminating his employment. Specifically, a jury could find that Yoshida took these actions against Plaintiff not because of the incidents Plaintiff had with the other employees, but because of Plaintiff's race. *See also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1092 n.7 (9th Cir. 2008) ("'[A] single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer.'" (quoting *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005))); *Metoyer*, 504 F.3d at 937 (finding that summary judgment was inappropriate where the plaintiff "presented direct evidence of discrimination in the form of several remarks by members of senior management suggesting the existence of racial bias").

In opposition, Hotel Defendants argue that Yoshida's statement constitutes a stray remark that is insufficient to establish pretext. *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438-39 (9th Cir. 1990) (finding that a supervisor's statement that another candidate was "a bright, intelligent, knowledgeable young man" was a stray remark and, as such, it was insufficient to establish pretext); *see also Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 2003) (finding that the corporate officer's remark that "we don't necessarily like

18

grey hair" was "more than [a] 'stray remark'" but at best weak circumstantial evidence).  Hotel Defendants argue that Yoshida's statement does not raise a genuine issue of material fact because it occurred three weeks prior to Plaintiff's termination, did not occur in context of discussions regarding termination, and is ambiguous.  *See* Doc. No. 31-1, at 21.

The court disagrees -- viewed in a light most favorable to Plaintiff, Yoshida's statement was not "stray" or in the least bit ambivalent or ambiguous. The comment directly followed Plaintiff's question asking why Yoshida did not like him and was stated only one day after Yoshida had warned Plaintiff that another violation would result in Plaintiff's termination.  Moreover, Yoshida's statement shows an animus toward Principle Hotel's hiring and retention of Caucasian employees.  This statement "directly suggests the existence of bias and no inference is necessary to find discriminatory animus."  *Godwin*, 150 F.3d at 1221; *see also Metoyer*, 504 F.3d at 937; *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1096 n.8 (9th Cir. 2005) (describing direct evidence as that which "proves the fact of discriminatory animus without the need for substantial inference" (citations omitted)).  Accordingly, the court DENIES Hotel Defendants' Motion for Summary Judgment at to Plaintiff's Title VII discrimination claim.

### 2. Sexual Harassment

Because the elements of Title VII and Hawaii state claims for sexual harassment differ slightly, the court addresses these claims separately.

### a. Title VII

In establishing a Title VII sexual harassment claim, as a threshold matter, a plaintiff must prove that any harassment took place 'because of sex.'" *Dominguez-Curry*, 424 F.3d at 1034 (citation and quotation signals omitted); *see Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (stating that a plaintiff is "required to prove that any harassment [that] took place [was] 'because of sex.'" (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79 (1998))). Plaintiff must also establish a prima facie case of sexual harassment hostile work environment, by showing that: "(1) [he] was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)). Finally, "where harassment by a co-worker is alleged, the employer can be held liable only where 'its own negligence is a cause of the harassment.'" *Swenson v. Potter*, 271 F.3d 1184, 1191

20

(9th Cir. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998).

Hotel Defendants argue, among other things, that summary judgment must be granted on Plaintiff's sexual harassment claim because Plaintiff cannot prove that any harassment by Mayoral took place "because of sex," and in any event, Hotel Defendants had no notice of any sexual harassment by Mayoral. Based on the following, the court agrees.

As to Hotel Defendants' first argument, where the claim involves same-sex sexual harassment, there are several situations in which the harassment may be viewed as discrimination because of sex: (1) when proposals to engage in sexual activity are made by the harasser and there is credible evidence that the harasser is homosexual; (2) when the victim is treated in a sex-specific manner which suggests hostility toward people of the victim's sex; or (3) when men and women are treated differently by the harasser.  *Oncale*, 523 U.S. at 80-81; *see also Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006); *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1134 (10th Cir. 2005); *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 262-63 (3d Cir. 2001).  There may be other examples, but "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged

with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex.'"  *Oncale*, 523 U.S. at 81 (ellipses and brackets in original).

Plaintiff has not established a genuine issue of material fact that any of these circumstances apply -- Plaintiff admits that Mayoral was not proposing to engage in sexual activity with Plaintiff, *see* Doc. No. 32-3, Defs.' Ex. A at 148:12-14, and there is no evidence suggesting either that Plaintiff was treated in a sex-specific manner suggesting hostility toward men, or that Mayoral treated women differently.  Further, Plaintiff does not suggest that the harassment he felt should be viewed as discrimination because of sex based on some other mechanism.  Rather, the evidence suggests that Mayoral's conduct was "merely tinged with offensive sexual connotations," *see Oncale*, 523 U.S. at 81, and that Mayoral simply used this offensive term to provoke a fight and not because of Plaintiff's sex.  *See Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1086 (7th Cir. 2000) ("[S]exually explicit insults that arise solely from altercations over work-related issues, while certainly unpleasant, do not violate Title VII."); *Johnson v. Hondo*, 125 F.3d 408, 414 (7th Cir. 1997) (affirming summary judgment where the plaintiff's "showing amounts to nothing more than the fact that [co-worker] repeatedly provoked him with a sexually explicit taunt").  Accordingly, Plaintiff has not carried his summary judgment burden of establishing that Mayoral's conduct was harassment "because

of sex."

As to Hotel Defendants' second argument, the court finds that even if Mayoral sexually harassed Plaintiff, summary judgment must still be granted on this claim because there is no evidence that Hotel Defendants had any notice of Mayoral's sexually-harassing conduct.  "Title VII liability is direct, not derivative: An employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct."  *Swenson*, 271 F.3d at 1191-92.  As a result, "an employer cannot be held liable for misconduct of which it is unaware."  *Id.* at 1192.  The undisputed evidence presented establishes that Plaintiff did not complain to anyone in management about the alleged sexual harassment by Mayoral before his termination.  *See* Doc. No. 32-3, Defs.' Ex. A at 135:3-7.  Rather, Plaintiff complained about the threat of physical violence -- specifically, that Mayoral tried to start a fight with Plaintiff, and called Plaintiff a "faggot" because Plaintiff refused to fight, not because of his sexual orientation.  *See* Doc. No. 32-7, Defs.' Ex. B.  Accordingly, Plaintiff has failed to raise a genuine issue of material fact that Hotel Defendants should be held liable for Mayoral's alleged sexually harassing conduct.

In sum, the court finds that Plaintiff has failed to carry his prima facie burden of establishing a genuine issue of material fact of a hostile work

23

environment and GRANTS Hotel Defendants' Motion for Summary Judgment on Plaintiff's sexual harassment Title VII claim.

     *b.*    *HRS § 378-2*

     Like Title VII, HRS § 378-2 makes it unlawful to discriminate an employee "because of . . . sex." In order to establish a sexual harassment claim pursuant to HRS § 378-2, a plaintiff must show that:

> (1) he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct or visual forms of harassment of a sexual nature; (2) the conduct was unwelcome; (3) the conduct was *severe or pervasive*; (4) the conduct had the *purpose* or *effect* of either: (a) *unreasonably interfering with the claimant's work performance*, **or** (b) *creating an intimidating, hostile, or offensive work environment*; (5) the claimant actually perceived the conduct as having such purpose or effect; and (6) the claimant's perception was objectively reasonable to a person of the claimant's gender in the same position as the claimant.

*Nelson v. Univ. of Haw.*, 97 Haw. 376, 390, 38 P.3d 95, 109 (2001). Further, where the conduct at issue is between employees, "an employer shall be responsible for acts of sexual harassment in the workplace where the employer or its agents or supervisory employees knows or should have known of the conduct and fails to take immediate and appropriate corrective action." Haw. Admin. R. § 12-46-109(d). In evaluating a sexual harassment claim on summary judgment, the court must "look at the record as a whole and at the totality of the

24

circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Nelson*, 97 Haw. at 391, 38 P.3d at 110 (quotations omitted).

Hotel Defendants make the same arguments for summary judgment on this claim as they do for the Title VII claim, and the court finds that they apply with equal force to Plaintiff's claim pursuant to HRS § 378-2.

Regarding Hotel Defendants' argument Plaintiff cannot prove that any harassment by Mayoral took place "because of sex," the court could find no Hawaii cases discussing when same-sex harassment constitutes discrimination because of sex under HRS § 378-2. While the Hawaii Supreme Court has recognized a distinction between federal and state law as to the "severe and pervasive" element of a prima facie case, *see Arquero v. Hilton Haw. Village LLC*, 104 Haw. 431, 91 P.3d 513 (2004), this difference does not suggest that Hawaii courts would depart from *Oncale's* interpretation of Title VII's "because of sex" language, especially where HRS § 378-2 includes this same language. Indeed, Hawaii courts have found federal law instructive in interpreting HRS § 378-2. *See, e.g., id.* (citing to various federal cases throughout opinion); *see also Steinberg v. Hoshijo*, 88 Haw. 10, 18, 960 P.2d 1218, 1226 (1998) (citing *Oncale* and other federal cases favorably in interpreting HRS § 378-2). Accordingly, the court finds

25

that the Hawaii Supreme Court would apply *Oncale's* test in evaluating same-sex harassment.  Applying this standard, summary judgment in warranted.

As for Hotel Defendants' argument that they had no notice of any sexual harassment by Mayoral, as explained above, there is no evidence that they knew or should have known of Mayoral's potentially sexually harassing conduct. Rather, at most they were aware that Mayoral tried to start a fight with Plaintiff and called Plaintiff a "faggot" when Plaintiff refused to fight.  *See* Doc. No. 32-7, Defs.' Ex. B.

The court therefore GRANTS Hotel Defendants' Motion for Summary Judgment on Plaintiff's sexual harassment claim.

## B.      Count III:  Wrongful Termination in Violation of Public Policy

Plaintiff alleges a claim of wrongful termination in violation of public policy based on the same allegations supporting his discrimination and sexual harassment claims.  *See* Am. Compl. ¶¶ 25-27.  Hotel Defendants argue that this claim must be dismissed because Title VII and HRS Chapter 378 already provide a sufficient remedy for Plaintiff's allegations.

The Hawaii Supreme Court recognized the common law tort of wrongful discharge in violation of public policy in *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 380, 652 P.2d 625, 631 (1982), holding that an "employer may

26

be held liable in tort where his discharge of an employee violates a clear mandate of public policy."  In order to determine "whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme." *Parnar*, 65 Haw. at 380, 652 P.2d at 631; *see also Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250, 257, 865 P.2d 170, 173 (1994).  Such claim, however, cannot stand where a statute provides a sufficient remedy for the violation:

> [Such claim] was intended to apply to a "narrow class of cases" where the wrongful discharge action is seen as necessary to effectuate the public policy at stake.  If, however, the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge, provision of a further remedy under the public policy exception is unnecessary.  If the legislature has considered the effect of wrongful discharge on the policies which they are promoting, provision by the courts of a further remedy goes beyond what the legislature itself thought was necessary to effectuate that public policy.

*Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 464, 879 P.2d 1037, 1047 (1994) (quoting *Lapinad v. Pac. Oldsmobile-GMC, Inc.*, 679 F. Supp. 991, 993 (D. Haw. 1988).

Title VII and HRS § 378 expressly prohibit workplace discrimination because of race and/or sex, and courts have found that as a result, a plaintiff cannot state a *Parnar* claim based on the same conduct.  *See, e.g.*, *Lapinad*, 679 F. Supp. at 993 ("Thus, even though Title VII is not an exclusive remedy, in that it does not

abrogate remedies which already existed, it does not create an additional common law remedy beyond the specific remedies contained in the statute."); *Howard v. Daiichiya-Love's Bakery, Inc.*, 714 F. Supp. 1108, 1113 (D. Haw. 1989) (barring public policy claim based upon policy in HRS § 378-2); *Lui v. Intercontinental Hotels Corp.*, 634 F. Supp. 684 (D. Haw. 1986) (barring public policy claim based upon Title VII and HRS § 378-2); *Ross*, 76 Haw. at 464, 879 P.2d at 1047 (affirming circuit court decision "that an independent *Parnar* claim could not be maintained where the public policy upon which the claim is based is embodied in a statute, *i.e.*, Part I of HRS Chapter 378, that itself provides a sufficient remedy for its violation").

Accordingly, Plaintiff cannot state a claim for wrongful termination in violation of public policy based on the same conduct as his Title VII and HRS § 378 claims because these statutes already provide a sufficient remedy.  The court therefore GRANTS Hotel Defendants' Motion for Summary Judgment as to Count III of the Amended Complaint.

## C.     Count V:  Vicarious Liability

The Amended Complaint alleges that at all times, Mayoral was acting in the scope of his employment such that Hotel Defendants are vicariously liable for Mayoral's actions.  Am. Compl. ¶ 34.  Defendants argue that summary

judgment must be granted on this claim because Mayoral's conduct was outside the scope of his employment.

"It is well established that '[a] master is subject to liability for the torts of his [or her] servants committed while acting in the scope of their employment.'" *State v. Hoshijo ex rel. White*, 102 Haw. 307, 319 76 P.3d 550, 562 (2003) (quoting Restatement (Second) of Agency, § 219(1), at 481). "[T]o recover under the respondeat superior theory, a plaintiff must establish: 1) a negligent act of the employee, in other words, breach of a duty that is the legal cause of plaintiff's injury; and 2) that the negligent act was within the employee's scope of employment." *Wong-Leong v. Haw. Indep. Refinery, Inc.*, 76 Haw. 433, 438, 879 P.2d 538, 543 (1994).

In determining whether an act was within the employee's scope of employment, Hawaii courts apply the Restatement (Second) of Agency, § 228, at 504, which provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>> (a) it is of the kind that he is employed to perform;
>> (b) it occurs substantially within the authorized time and space limits; and
>> (c) it is actuated at least in part, by a purpose to serve the master[.]
> . . .
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized,

> far beyond the authorized time or space limits, or too
> little actuated by a purpose to serve the master.

*See also Hoshijo*, 102 Haw. at 319-20, 76 P.3d at 319-20; *Wong-Leong*, 76 Haw. at

438, 879 P.2d at 543 (quoting *Henderson v. Prof'l Coatings Corp.*, 72 Haw. 387,

391-92, 819 P.2d 84, 88 (1991)).  "[T]wo key factors must be considered:

1) whether 'the enterprise of the employer would have benefitted by the context of

the act of the employee but for the unfortunate injury'; and 2) 'whether the

employer's risks are incident to [the] enterprise.'"  *Wong-Leong*, 76 Haw. at 441,

879 P.2d at 547 (quoting *Henderson*, 72 Haw. at 395, 819 P.2d at 89).

Determining whether an employee is acting within the scope of his

employment "is a question of fact to be determined in the light of the evidence of

each particular case." *Id.* (quotations and citation signals omitted).  With that said,

however, "[w]here the facts are susceptible of but one reasonable conclusion, the

question [whether the employee is acting within the scope of his employment] may

become a question of law for the court." *Id.* (quoting *Henderson*, 72 Haw. at 393,

819 P.2d at 89).

Viewing the evidence in a light most favorable to Plaintiff, there is no

genuine issue of material fact that Mayoral was acting on his own behalf during the

two incidents with Plaintiff on August 31, 2008.  Mayoral was off duty at the time,

and there is no evidence suggesting that Mayoral was at the Hotel for purposes

relating to his work.  Further, there is no evidence suggesting that Mayoral's actions were "actuated, even in part, by a purpose to serve" Hotel Defendants -- Hotel Defendants gained no benefit by Mayoral coming to the Hotel during his off hours, much less by him engaging in the intentional conduct of threatening Plaintiff.  *See Henderson*, 72 Haw. at 394, 819 P.2d at 89 (finding that where plaintiff was injured by employee driving employer's vehicle while intoxicated, summary judgment should be granted because the act did not occur during work hours and "[t]here was no intention to act in the employer's interest"); *see also Ho-Ching v. City & County of Honolulu*, 2009 WL 1227871, at *13 (D. Haw. Apr. 29, 2009) (finding that summary judgment must be granted because sexual harassment by employee "was not the conduct for which he was hired as a police officer and by no means served the interests of Defendant").

In opposition, Plaintiff argues in summary fashion that a fact question exists whether Mayoral was acting within the scope of his employment, but sets forth absolutely no facts to support this argument.  Doc. No. 52, at 8-9.  The undisputed facts establish, however, that Mayoral was not working at the time of the August 31, 2008 incident, and that his intentional acts were not for the benefit of Hotel Defendants.  The court therefore GRANTS Hotel Defendants' Motion for Summary Judgment on Count V of the Amended Complaint for vicarious liability.

31

**D.      Count VI: IIED**

The basis of Plaintiff's IIED claim are the same allegations supporting his discrimination and sexual harassment claims.  Am. Compl. ¶¶ 35-37. Defendants argue that summary judgment should be granted on Plaintiff's IIED claim because it is preempted by the Hawaii Worker's Compensation Statute, HRS § 386-5, and Plaintiff cannot establish the requisite elements for this claim.  The court addresses these arguments in turn.

**1.      *Hawaii Workers' Compensation Act Exclusivity***

The Hawaii Workers' Compensation Act provides a remedy to an employee who "suffers personal injury . . . by accident arising out of and in the course of the employment . . . proximately caused by or resulting from the nature of the employment."  HRS § 386-3(a).  This remedy is exclusive, excluding claims that otherwise encompass this conduct.  Specifically, HRS § 386-5 provides:

> The rights and remedies herein granted [in the workers' compensation statute] to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee . . . on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

Section 386-8 "extends [this] immunity from suit to an injured worker's co-employees."  *Iddings v. Mee-Lee*, 82 Haw. 1, 6, 919 P.2d 263, 268 (Haw. 1996).

Nonetheless, "[a]nother employee of the same employer shall not be relieved of his liability as a third party, if the personal injury is caused by his wilful and wanton misconduct."  HRS § 386-8.

While the Hawaii Workers' Compensation Act bars claims based on negligence, it does not bar claims based on the intentional conduct of an employer or employee because such claims are not based on "accidents" related to employment.  *See Kahale v. ADT Auto. Servs., Inc.*, 2 F. Supp. 2d 1295, 1302 (D. Haw. 1998) (citing *Furukawa v. Honolulu Zoological Soc.*, 85 Haw. 7, 18, 936 P.2d 643 (1997)).  Accordingly, the Hawaii Workers' Compensation Act does not bar Plaintiff's IIED claim,[6] and the court DENIES Defendants' Motion for Summary Judgment on Plaintiff's IIED claim.

## 2.  *Merits of IIED Claim*

Defendants assert that there is no outrageous conduct sufficient to support Plaintiff's IIED claim.  The court first outlines the framework for IIED claims, and then applies the framework to both Principle Hotels and Mayoral.

### a.  *Framework*

"The elements of the tort of intentional infliction of emotional distress

---

[6]  In support of their argument, Hotel Defendants cite *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 729 P.2d 743 (1987), *see* Doc. No. 31-1, at 33, but *Cole* does not provide an interpretation of Hawaii law and otherwise conflicts with the Hawaii law cited above.

are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the

act was outrageous, and 3) that the act caused 4) extreme emotional distress to

another." *Hac v. Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003)

(adopting IIED standard from Restatement (Second) of Torts).  The Restatement

describes what constitutes "outrageous" conduct:

> It has not been enough that the defendant has acted with
> an intent which is tortious or even criminal, or that he has
> intended to inflict emotional distress, or even that his
> conduct has been characterized by "malice," or a degree
> of aggravation which would entitle the plaintiff to
> punitive damages for another tort.  Liability has been
> found only where the conduct has been so outrageous in
> character, and so extreme in degree, as to go beyond all
> possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized
> community.  Generally, the case is one in which the
> recitation of the facts to an average member of the
> community would arouse his resentment against the
> actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d. (1965).  "The question whether the

actions of the alleged tortfeasor are . . . outrageous is for the court in the first

instance, although where reasonable persons may differ on that question it should

be left to the jury." *Nagata v. Quest Diagnostics Inc.*, 303 F. Supp. 2d 1121, 1127

(D. Haw. 2004) (citing *Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 387, 14 P.3d 1049,

1068 (2000)).

Hawaii "courts have generally been reluctant to define conduct as

34

outrageous." *Id.* (citing *Shoppe*, 94 Haw. at 387, 14 P.3d at 1068 (finding that abusive verbal attacks by an employer directed at an employee did not rise to the level of outrageous conduct as a matter of law)); *Keiter v. Penn Mut. Ins. Co.*, 900 F. Supp. 1339, 1348 (D. Haw. 1995) (finding that the defendant's conduct which resulted in a significant increase in the premium payment on plaintiff's life insurance policy was not outrageous conduct as a matter of law); *Lapinad,* 679 F. Supp. at 996 (stating that an employer must have engaged in conduct beyond merely firing an employee for unfair reasons in order for the conduct to possibly be considered outrageous).

An IIED claim cannot be sustained by "threats, annoyances, petty oppressions, or other trivialities." *Young v. Allstate Ins. Co.*, 119 Haw. 403, 425, 198 P.3d 666, 688 (2008) (quoting Restatement (Second) of Torts § 46 cmt. d); *see also Bragalone v. Kona Coast Resort Joint Venture*, 866 F. Supp. 1285, 1294 (D. Haw. 1994). Indeed, a plaintiff "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d. With that said, however, "sexually harassing behavior, racial slurs, and accusations of criminal conduct could all possibly be considered outrageous conduct," *see Nagata*, 303 F. Supp. 2d at 1128 (citing *Lapinad*, 679 F. Supp. at 996), and conduct

that does not fit into any of these categories may still raise a question of fact. *Cf. id.* (determining that defendant's delay in disclosing error in drug test could be considered outrageous).

> b.    *Application -- Hotel Defendants*

Construing the facts in the light most favorable to Plaintiff, the court finds that Plaintiff has raised a genuine issue of material fact that Hotel Defendants' conduct was outrageous.  As described above, Plaintiff alleges that on September 10, 2008, Yoshida responded to Plaintiff's question of, "why don't you like me?," by stating, "How many white people do you see on my staff?"  Doc. No. 32-3, Defs.' Ex. A at Pl.'s Depo. 192:16-193:21.  The court finds that reasonable persons may differ as to whether these acts are outrageous.  *See Nagata*, 303 F. Supp. 2d at 1128; *cf. Lapinad*, 679 F. Supp. at 996 (stating that an employer must have engaged in conduct beyond merely firing an employee for unfair reasons in order for the conduct to possibly be considered outrageous)).

The court therefore DENIES Hotel Defendants' Motion for Summary Judgment on Plaintiff's IIED claim.

> c.    *Application -- Mayoral*

Construing the facts in the light most favorable to Plaintiff, the court finds that Plaintiff has raised a genuine issue of material fact that Mayoral's conduct

was outrageous.

Specifically, the evidence presented establishes that on August 31, 2008, Plaintiff approached Mayoral's vehicle on the belief that it was a guest vehicle, and then tried to walk away when he realized it was Mayoral. *See* Doc. No. 32-5, Defs.' Ex. A, Pl.'s Depo. at Ex. 8. Mayoral, completely unprovoked, jumped out of the vehicle, confronted Plaintiff, and tried to start a fight. Plaintiff walked away from Mayoral toward the Hotel lobby, and Mayoral followed the entire distance, pushing on Plaintiff and calling him a "f---ing haole faggot." *Id.*; Doc. No. 32-3, Pl.'s Depo. at 66:3-4, 64:24-65:9. This altercation -- which lasted ten to fifteen minutes -- stopped only after a couple of customers at the bar stepped in and confronted Mayoral. Doc. No. 32-3, Pl.'s Depo. at 66:3-13.

The court can infer that Mayoral knew that Plaintiff did not want to fight -- Plaintiff tried to get away from Mayoral, and called Tsui to get Mayoral to leave while Mayoral was pushing and following him. *Id.* at 69:5-11. Mayoral nonetheless came back several hours later to, as Mayoral put it, "kick [Plaintiff's] f---ing faggot ass." *Id.* at 76:12-77:5. Mayoral confronted Plaintiff at his car, again yelling slurs and trying to fight Plaintiff. *Id.* at 78:12-20. Plaintiff refused to fight and drove away in his truck. *Id.* at 78:21-79:2; *see also* Doc No. 32-5, Pl.'s Depo. Ex. 8.

The court finds that reasonable persons may differ as to whether these acts are outrageous.  Mayoral's conduct went far beyond mere "threats, annoyances, petty oppressions, or other trivialities."  *See* Restatement (Second) of Torts § 46 cmt d.  Instead, as relayed by Plaintiff, Mayoral attempted to start a fight with Plaintiff, invoking racial and sexually pejorative slurs.  Plaintiff, while being pushed by Mayoral, was trying to call Tsui for help.  Mayoral then returned some hours later, and again used racial and sexually pejorative slurs and attempted to fight.  Mayoral had no apparent reason to threaten Plaintiff with physical violence, had every intention of beating Plaintiff, and knew that Plaintiff did not want to confront Mayoral, much less be around him.  Reasonable people could differ as to whether this conduct is outrageous.  *See Lujano v. Town of Cicero*, 691 F. Supp. 2d 873, 885 (N.D. Ill. 2010) (listing relevant factors to consider including "(1) the power and influence wielded by the harassing party; (2) the likelihood that the threatened action could be carried out; (3) the legitimate reasons one might have for making the offensive statement; and (4) the defendant's awareness of the plaintiff's susceptibility to emotional stress"); *see also Elmowitz v. Exec. Towers at Lido, LLC*, 571 F. Supp. 2d 370, 379 (E.D.N.Y. 2008) ("In the cases that involved some kind of physical altercation, as is alleged here, the courts seem to focus on the extent of the assault, whether it was a one time occurrence or a pattern of behavior, and whether

38

the plaintiff felt she was in imminent harm.").

In opposition, Mayoral argues that there must be a pattern of verbal or physical threats to constitute outrageous conduct. *See* Doc. No. 33-1, at 8-9. The court rejects a bright-line rule; rather, outrageous conduct must be determined based on the facts and circumstances of the entire case. *See Young*, 119 Haw. at 426, 198 P.3d at 688 (stating that "this tort provides no clear definition of the prohibited [outrageous] conduct" (quotation and citation signals omitted)). Indeed, other courts have found a single incident sufficient to support an IIED claim. *See Jackson v. Local 705, Int'l Brotherhood of Teamsters, AFL-CIO*, 2002 WL 460841, at *16 (N.D. Ill. Mar. 26, 2002) (finding that "[t]he threat of physical harm distinguishes this case from those in which racial slurs have been held insufficient to support an IIED claim"); *Kiseskey v. Carpenters' Trust for So. Cal.*, 144 Cal. App. 3d 222, 229, 192 Cal. Rptr. 492, 496 (1983) (finding that threats of physical violence aimed at coercing the plaintiff to join the union "taken alone, or considered together as part of a course of conduct, needs no delicate weighing in order to conclude that it constitutes outrageous conduct"). The court therefore DENIES Mayoral's Motion for Summary Judgment on Plaintiff's IIED claim.

## E.    Punitive Damages

Because Plaintiff's IIED claim survives summary judgment, the court

denies Defendants' derivative request for summary judgment of Plaintiff's

incidental claim for punitive damages.  *See Kang v. Harrington*, 59 Haw. 652, 660,

587 P.2d 285, 291 (1978) ("An award of punitive damages is purely incidental to

the cause of action."); *see also Lee v. Aiu*, 85 Haw. 19, 34, 936 P.2d 655, 670

(1997) (holding record contained substantial evidence that defendants engaged in

"aggravated or outrageous misconduct" required to impose punitive damages where

IIED claim also stood).  Thus, the court DENIES Defendants' Motion for Summary

Judgment on Count VII of the Amended Complaint.

## F.    Back Pay

Defendants argue that summary judgment should be granted on

Plaintiff's request for back pay because Plaintiff failed to mitigate these damages.

While a plaintiff has a duty to use reasonable diligence in finding other

suitable employment, the employer has the burden of proving the plaintiff's failure

to mitigate damages.  *See Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th

Cir. 1995); *see also Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir.

1980).  The employer must prove "that, based on undisputed facts in the record,

during the time in question there were substantially equivalent jobs available, which

[the plaintiff] could have obtained, and that [the plaintiff] failed to use reasonable

diligence in seeking one."  *Odima*, 53 F.3d at 1497 (quoting *EEOC v. Farmer Bros.*

*Co.*, 31 F.3d 891, 906 (9th Cir. 1994); *see also Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978) ("To satisfy this burden, defendant must establish (1) that the damage suffered by plaintiff could have been avoided, *i.e.* that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.").

"Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990); *see also Booker v. Taylor Milk Co.*, 64 F.3d 860, 866 (3d Cir. 1995); *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983); *Cassella v. Mineral Park, Inc.*, 2010 WL 454992, at *5 (D. Ariz. Feb. 9, 2010). A "claimant need not go into another line of work, accept a demotion, or take a demeaning position," to mitigate damages. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231-32 (1982); *see also Standard Materials, Inc. v. NLRB*, 862 F.2d 1188, 1192-93 (5th Cir. 1989) (stating that an employee need not "accept jobs that pay significantly less than their former positions, for such employment is not properly deemed 'equivalent.'"); *N.L.R.B. v. Madison Courier, Inc.*, 472 F.2d

1307, 1319 (D.C. Cir. 1972) ("A discriminatee need not seek *or* accept employment which is dangerous, distasteful or essentially different from his regular job." (quotation and citation signals omitted)).

To show that there were substantially equivalent positions available after Plaintiff was terminated, Defendants point to classified advertisements contained in the Honolulu Advertiser seeking individuals for security guard, wait staff, and valet positions. *See* Doc. No. 58-7, Allen Decl. Exs. A-1 - A-14. These advertisements do not carry Defendants' burden. Even if all of these positions are "substantially equivalent" -- which the court need not decide -- Defendants have failed to explain how the positions in these advertisements have virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as Plaintiff's position at the Hotel. *Casella*, 2010 WL 454992 at *6; *see Holocheck v. Luzerne County Head Start, Inc.*, 2007 WL 954308, at *13 (M.D. Pa. Mar. 28, 2007) (finding that a printout of child care centers that employ individuals with the plaintiff's credentials was insufficient to carry the employer's burden); *see also Finley v. Manor Care of Kingsford, MI, L.L.C.*, 2008 WL 4743715, at *13 (W.D. Mich. Oct. 29, 2008).

The court therefore DENIES Defendants' Motion for Summary

42

Judgment as to Plaintiff's request for back pay.[7]

## V.  **CONCLUSION**

For the reasons stated above, the court GRANTS in part and DENIES in part Defendants' three Motions for Summary Judgment.  Plaintiff's claim against Principle Hotels and the Hotel for discrimination in violation of Title VII, and IIED claim against all Defendants remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 24, 2010.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Hughes v. Mayoral et al.*, Civ. No. 09-00386 JMS/BMK; Order (1) Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; (2) Granting in Part and Denying in Part Waikiki Sand Villa Hotel's Motion for Summary Judgment; and (3) Granting in Part and Denying in Part Mayoral's Motion for Summary Judgment

---

[7]  The Hotel also argues that it should be dismissed under the "single-employer" test. The court DENIES the Hotel's Motion for Summary Judgment on the claims against it without prejudice, based on: (1) the Hotel's failure to explain how this test applies to state law claims; and (2) the limited application of this test in the Ninth Circuit.  *See EEOC v. NCL Am., Inc.*, 2008 WL 281524, at *10 (D. Haw. Feb. 1, 2008) (stating that in the Ninth Circuit, the test is limited "to only the situations in which an employer does not qualify on its own under Title VII").